IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

TOTAL ADMINISTRATIVE SERVICES
CORPORATION,

OPINION & ORDER

Plaintiff,

v.

15-cv-364-jdp

PIPE FITTERS UNION LOCAL NO. 120
INSURANCE FUND,

Defendant and Third-Party Plaintiff,

v.

VANTAGE FINANCIAL GROUP, INC., and
VANTAGE FINANCIAL GROUP PLAN
SERVICES, INC.,

Third-Party Defendants.

This case arises out of an agreement that defendant and third-party plaintiff Pipe Fitters Union Local No. 120 Insurance Fund (the Fund) entered into with third-party defendants Vantage Financial Group, Inc. and Vantage Financial Group Plan Services, Inc. (collectively, Vantage). Vantage and the Fund are Ohio companies, and they signed their agreement in Ohio. Vantage later sold all of its assets—including the agreement—to plaintiff Total Administrative Services Corporation (TASC), a Wisconsin company.

After the sale, TASC began performing Vantage's obligations under the agreement. But the Fund became dissatisfied with TASC's performance, and so it stopped paying TASC's invoices. Unable to resolve their differences, TASC brought suit in Wisconsin state court, alleging breach of contract, quantum meruit, and unjust enrichment. The Fund removed the action to this court and now moves to dismiss the case for lack of personal jurisdiction. Dkt. 2. In the alternative, the Fund moves to transfer the case to the United States District

Court for the Northern District of Ohio. Although there are unresolved questions about whether personal jurisdiction exists, the court ultimately concludes that a transfer is appropriate to serve the interest of justice.

ALLEGATIONS OF FACT

The court draws the following background information from TASC's complaint, the attached exhibits, and the materials that the parties submitted in connection with the Fund's motion. The court resolves any disputes of fact in TASC's favor. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). At this point in the case, the facts are as follows.

The Fund is an insurance plan with principal offices in Cleveland, Ohio. Vantage Financial Group, Inc. and Vantage Financial Group Plan Services, Inc. are Ohio corporations, located in Independence, Ohio. TASC is a Wisconsin corporation with principal offices located in Madison, Wisconsin.

The Fund and Vantage entered into an agreement in January 2014, under which Vantage would administer portions of the Fund's employee benefit plan. The agreement—attached as an exhibit to TASC's complaint—was for an initial term of one year, and it would automatically renew for continuing 12-month periods unless either the Fund or Vantage gave 30 days' notice of an intent to not renew. The Fund also had the option to cancel the agreement, at any time, with 60 days' notice.

Vantage sold the agreement and the rest of its assets to TASC on July 3, 2014, without consulting the Fund. The record does not indicate when the Fund learned about the sale, but one of the Fund's officers has filed an affidavit explaining that about two weeks after

the sale, "the Fund received notice that Vantage Plan Services had entered into a 'partnership' with TASC." Dkt. 3-2, ¶ 19. The Fund believed that Vantage would still administer the employee benefit plan and that the "partnership" meant only that Vantage would use TASC's software platform to process claims. But the Fund was wrong: TASC took over all of Vantage's obligations in December 2014, effectively replacing Vantage as the Fund's third-party administrator. The Fund generally cooperated with TASC to facilitate the transition, corresponding by email and sending TASC information about the plan's participants.

Neither side has given a clear summary of what happened next, but it appears that problems arose in the months after the transition. A letter from the Fund's counsel to Vantage and TASC, dated March 31, 2015, identified several "breaches" of the agreement between Vantage and the Fund. For example, the letter stated that the transition from Vantage's service to TASC's service left the Fund's participants without access to their reimbursement funds for parts of 2014 and 2015, and that TASC had failed to correct double-payments and other accounting errors that occurred during the transition. The letter also explained that the Fund was unable to close out its 2014 plan year until TASC reconciled accounts for October through December. TASC disagreed that any deficiencies existed or that it had ever failed to provide the Fund with necessary information.

These differences festered. When the Fund eventually stopped paying invoices, TASC cancelled the agreement and filed suit in Wisconsin state court for breach of contract, quantum meruit, and unjust enrichment. The complaint alleged that the Fund owed TASC $118,422.71 in unpaid invoices.

The Fund timely removed to this court, pursuant to 28 U.S.C. § 1441, and the Fund eventually filed counterclaims against TASC and a third-party complaint against Vantage. On the same day that the Fund removed the action from state court, it filed a motion to dismiss, or, in the alternative, to transfer this case. The court has subject matter jurisdiction over TASC's claims under 28 U.S.C. § 1332, because TASC and the Fund are completely diverse and the amount in controversy exceeds $75,000. The court has supplemental jurisdiction over the Fund's counterclaims and third-party claims under 28 U.S.C. § 1367, because they are part of the same underlying case or controversy and because adding Vantage to this case does not destroy diversity.

ANALYSIS

The Fund has moved to dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(2), contending that the court lacks personal jurisdiction over it. Dkt. 2. In the alternative, the Fund moves to transfer this case to Ohio. *Id.* The Fund's motion raises significant jurisdictional concerns. But the court will ultimately decline to rule definitively on that aspect of the motion because regardless of whether jurisdiction is proper, the interest of justice requires transferring this case.

**A.  Personal jurisdiction**

As the plaintiff, TASC has the burden of proving that the court can exercise personal jurisdiction over the Fund. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997). Because the Fund has submitted affidavits contesting personal jurisdiction, however, TASC "must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue Research Found.*, 338 F.3d at 783. The court will resolve the

Fund's motion on the papers, and so TASC must make only a prima facie showing of personal jurisdiction. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002).

"A federal district court exercising diversity jurisdiction has personal jurisdiction over a nonresident only if a court of the state in which it sits would have such jurisdiction." *Steel Warehouse of Wis., Inc. v. Leach*, 154 F.3d 712, 714 (7th Cir. 1998), *as amended* (Oct. 13, 1998). Under Wisconsin law, TASC must first show that the Fund "falls within the grasp of Wisconsin's long-arm statute." *Logan Prods., Inc. v. Optibase, Inc.*, 103 F.3d 49, 52 (7th Cir. 1996). "Then, because Wisconsin presumes its long-arm statute merely codifies the federal due process requirements . . . the burden switches to [the Fund] to show that jurisdiction would nonetheless violate due process." *Id.* (internal citations omitted).

### 1. Wisconsin's long-arm statute

TASC contends that this case falls under the subsection of Wisconsin's long-arm statute that covers actions concerning local services, goods, and contracts. Under Wis. Stat. § 801.05(5)(b), Wisconsin courts may exercise personal jurisdiction over any action that "[a]rises out of services actually performed for the plaintiff by the defendant within this state, or services actually performed for the defendant by the plaintiff within this state if such performance within this state was authorized or ratified by the defendant."

The Fund does not dispute that TASC actually performed activities in Wisconsin. And although the Seventh Circuit has questioned whether issuing insurance policies and processing claims qualify as "services" under § 801.05(5), *see Federated Rural Elec. Ins. Corp. v. Inland Power & Light Co.*, 18 F.3d 389, 394 (7th Cir. 1994), the record confirms that TASC undertook substantial responsibilities in addition to claims processing. Under the agreement that Vantage and the Fund signed, the third-party administrator was responsible for

preparing educational and promotional materials for plan participants, assisting with on-site meetings to promote the plan's benefits, and generally providing customer support to plan participants. Dkt. 3-1, at 2-3. Thus, for purposes of the present motion, the court accepts as true that TASC began performing these duties in December 2014, and the court assumes that these duties qualified as "services" under Wisconsin's long-arm statute.

The Fund nevertheless contends that § 801.05(5)(b) does not provide jurisdiction because the Fund "did not authorize or ratify TASC's performance of services in Wisconsin." Dkt. 3, at 7. But the record contradicts this assertion. The Fund was obviously aware that TASC was located in Wisconsin and performing duties as a plan administrator here. Informational materials describing the "Vantage/TASC partnership," which the parties discussed in October 2014, indicated that TASC was headquartered in Madison. Dkt. 15-1, at 7. Moreover, invoices that the Fund received from TASC included TASC's Madison address and directed the Fund to send payment to a PO Box in Milwaukee. Dkt. 15-7, at 2-6.

The record also contains evidence that the Fund ratified—and even demanded—at least some of the services that TASC performed in Wisconsin. *See Daniel J. Hartwig Assocs., Inc. v. Kanner*, 913 F.2d 1213, 1217 (7th Cir. 1990) ("The long-arm statute requires only that *some* services were contemplated to be or actually were performed in Wisconsin.") (original emphasis). For example, in an effort to address problems with the transition from Vantage to TASC, the Fund's business representative wrote an email outlining the Fund's understanding of TASC's responsibilities. Dkt. 15-3, at 2. The email explained that "[TASC] will be responsible for the recovery of information and data from its associate Vantage Financial. . . . [O]ur working relationship with Vantage expired December 31, 2014." *Id.* The email also stated that "[t]he step by step process of making the [Fund's benefit plan] whole

6

and functional for the contributing participants is dependent on the daily oversight and guidance you assured you would be responsible for." *Id.* Finally, the email indicated that the Fund's employees would continue participating in monthly reconciliations. *Id.* When this email did not bring about improvement, the Fund's counsel wrote TASC a letter, demanding that TASC remedy its failure to perform the duties that it undertook as a third-party administrator. Dkt. 15-4, at 2-9.

TASC alleges that it performed the duties that the Fund requested. Construing the facts in TASC's favor, the court is satisfied that this case arises out of services that TASC provided for the Fund in Wisconsin, and with the Fund's authorization or ratification. TASC has therefore made a prima facie showing that this court can exercise personal jurisdiction over the fund under § 801.05(5)(b).[1]

### 2. Due process

The due process inquiry is more complicated. TASC does not contend that the Fund has continuous and systematic contacts with Wisconsin that would support general jurisdiction. Dkt. 13, at 9. Thus, the court must determine whether specific jurisdiction exists. There are three requirements for specific jurisdiction: (1) the Fund must have purposefully availed itself of the privilege of conducting business in Wisconsin or purposefully directed its activities at the state; (2) the alleged injury must have arisen from the Fund's forum-related activities; and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice. *Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012). The Fund has raised significant challenges to two of these requirements.

---

[1] TASC also asserts that § 801.05(5)(a) applies. The court need not address this assertion because the Fund is subject to personal jurisdiction under a different provision of the statute.

"Personal jurisdiction in breach-of-contract actions often turns on whether the defendant 'purposefully availed' himself of the privilege of conducting business or engaging in a transaction in the forum state." *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010). TASC relies heavily on the fact that the Fund had the option to terminate the agreement at any time and never chose to do so, even after learning that TASC was located in Wisconsin. But the existence of a contract with a party located in Wisconsin does not, by itself, give rise to personal jurisdiction in Wisconsin's courts. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985). Instead, the court looks to "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing[, which] may indicate the purposeful availment that makes litigating in the forum state foreseeable to the defendant." *Hyatt Int'l Corp.*, 302 F.3d at 716 (internal citations and quotation marks omitted).

The underlying business relationship at issue in this case began in Ohio, with a contract between two Ohio companies. No negotiations occurred in Wisconsin, nor did either party expect that performance would occur here. Vantage sold the contract to a Wisconsin company without any advance notice to the Fund. Thus, the contacts that the Fund had with Wisconsin were merely in response to Vantage or TASC's actions and were not part of the Fund's affirmative effort to enter the state. TASC observes that the Fund voluntarily assisted in migrating information from Vantage to TASC, frequently communicated with TASC about the services that TASC was providing, and demanded that TASC sign a separate agreement with the Fund to ensure compliance with federal law. But the "'minimum contacts' analysis looks to the defendant's contacts with *the forum State itself*, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014) (emphasis added).

The Fund sent communications into Wisconsin because that was where TASC was located. None of the Fund's participating members live in Wisconsin, nor does the Fund have employees in this state. Dkt. 3-2, ¶¶ 30-31.

With substantial questions surrounding purposeful availment, the court will discuss the remaining requirements for specific jurisdiction only briefly. TASC can likely clear the causation threshold: if the Fund's contacts were sufficient to create jurisdiction, then those contacts gave rise to the injury in this case. But the third requirement is more problematic. To determine whether exercising personal jurisdiction offends traditional notions of fair play and substantial justice, the court evaluates "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Burger King Corp.*, 471 U.S. at 477 (internal citations and quotation marks omitted). Under these factors, there is an inherent unfairness in forcing the Fund to come to Wisconsin to litigate a contract that wound up in this state through no affirmative action that the Fund took (although the Fund's decision to continue a business relationship with a Wisconsin company mitigates some of this unfairness).

On balance, the Fund has mounted a persuasive challenge to whether this court's exercise of personal jurisdiction complies with due process.

## B. Transfer

Personal jurisdiction is a close call, but the court ultimately does not need to resolve the issue because transfer is appropriate. Under 28 U.S.C. § 1404(a), the court may transfer this case to any federal court where it could have been brought "[f]or the convenience of

parties and witnesses, [and] in the interest of justice." The parties do not dispute that TASC could have brought suit in Ohio. Thus, the issue is whether the Fund can carry its "burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986).

As a starting point, the court defers to TASC's choice in forum. The court is not persuaded by the Fund's assertion that TASC, as a larger company with significant revenue, "is better equipped to bear the expense of litigation in Ohio." Dkt. 3, at 20. The two possible forums are the parties' home states. Regardless of where this case is tried, one party will have to litigate away from home, and "[w]here the balance of convenience is a close call, merely shifting inconvenience from one party to another is not a sufficient basis for transfer." *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010). TASC's choice of forum is entitled to deference, especially given that TASC has chosen to litigate in its home state. *Sentry Select Ins. Co. v. McCoy Corp.*, 980 F. Supp. 2d 1072, 1077 (W.D. Wis. 2013).

"With respect to the convenience evaluation, courts generally consider the availability of and access to witnesses, and each party's access to and distance from resources in each forum." *Research Automation, Inc.*, 626 F.3d at 978. Here, the Fund contends that documentary evidence relating to its initial agreement with Vantage and financial records from TASC's transactions with the Fund's members are located in Ohio. But "both the Seventh Circuit and this court have held that modern technology renders the location of documents and other sources of proof only minimally important in the transfer analysis." *Wis. Alumni Research Found. v. Medimmune, LLC*, No. 14-cv-165, 2014 WL 6389583, at *3 (W.D. Wis. Nov. 14, 2014) (citing *Bd. of Trs., Sheet Metal Workers' Nat. Pension Fund v. Elite*

*Erectors, Inc.*, 212 F.3d 1031, 1037 (7th Cir. 2000), and *Milwaukee Elec. Tool Corp. v. Black &
Decker (N.A.), Inc.*, 392 F. Supp. 2d 1062, 1064 (W.D. Wis. 2005)). The Fund also suggests
that a trial will require testimony from Vantage officers and employees, who are beyond the
court's subpoena power. This is a persuasive point, although the Fund has impleaded
Vantage, and so some of these witnesses may appear voluntarily. On balance, a court in Ohio
would be closer to many relevant sources of proof and more convenient for many of the
witnesses in this case. But given the ease of transporting documents and witnesses, the
convenience factors do not weigh strongly in favor of disrupting TASC's choice in forum.

Under the second component of § 1404(a), the court must determine whether the
interest of justice requires transferring this case. This is a separate aspect of the § 1404(a)
analysis, and it "may be determinative in a particular case, even if the convenience of the
parties and witnesses might call for a different result." *Coffey*, 796 F.2d at 220. The relevant
factors are docket congestion and speed to trial in the transferor and transferee forums, each
court's familiarity with the relevant law, the desirability of resolving the controversy in each
locale, and the relationship of each community to the controversy. *Research Automation, Inc.*,
626 F.3d at 978. These factors weigh in favor of transfer.

The Fund observes that its underlying agreement with Vantage is governed by Ohio
law, and so it makes sense to try this case in an Ohio court. *See Coffey*, 796 F.2d at 221 ("In a
diversity action it is also considered advantageous to have federal judges try a case who are
familiar with the applicable state law."). Most of the claims in this case will be governed by
Ohio law: TASC's breach of contract claim against the Fund; the Fund's counterclaims
against TASC; and the Fund's third-party claims against Vantage. Even if Ohio contract law
is similar to Wisconsin contract law, this factor weighs in favor of transfer.

11

The Fund also asserts that Ohio is a more desirable forum for this dispute. The Fund's members—who are the end-users for TASC's services—perform work primarily in Ohio. Dkt. 3-2, ¶ 8. According to the Fund, none of its participants reside in Wisconsin or have used reimbursement services in Wisconsin. *Id.* ¶ 30. Finally, in selecting Vantage as a third-party administrator, the Fund purposefully chose an Ohio company with offices less than five miles away from the Fund's office. *Id.* ¶ 13. These facts, which TASC does not dispute, give Ohio a significant interest in resolving the case. This factor weighs in favor of transfer.

TASC does not offer a principled response to the Fund's arguments, other than to suggest that Wisconsin has an equally strong interest in affording its residents redress for in-state injuries caused by out-of-state actors. Dkt. 13, at 17. The court disagrees with TASC's assertion. Wisconsin's interest in resolving this dispute is limited because of the indirect route that led the Fund to cause an injury to a Wisconsin company. TASC reached out to Ohio and purchased a business relationship with the Fund from Vantage. Although the Fund may have ultimately acquiesced to the transition, this case does not present a claim against a foreign company that deliberately reached into Wisconsin and caused an injury.

The parties do not discuss differences in the relative docket congestion in the two potential forums. Although this court traditionally resolves cases quickly, "this district's speed alone would be insufficient to overcome a motion to transfer if other factors showed that another venue is clearly more convenient." *Leggett & Platt, Inc. v. Lozier, Inc.*, No. 04-cv-932, 2005 WL 1168360, at *2 (W.D. Wis. May 17, 2005). In addition to the reasons mentioned above, transferring this case to Ohio will avoid potential concerns about personal jurisdiction. *See Spherion Corp. v. Cincinnati Fin. Corp.*, 183 F. Supp. 2d 1052, 1059 (N.D. Ill. 2002) ("[T]he issue of whether this court has personal jurisdiction over [defendant] is difficult and

likely to remain contested, whereas personal jurisdiction in Ohio is undisputed. Transfer to Ohio will therefore conserve judicial resources and lead to a more expeditious resolution of this lawsuit by avoiding a personal jurisdiction quagmire."). The court has expressed doubts as to whether the Fund's mere compliance in this case is tantamount to purposeful availment. A transfer to a district with clear jurisdiction avoids the possibility of litigating this case to a final judgment only to have an appeal invalidate the entire proceeding.

The Fund has demonstrated that a transfer is appropriate to serve the interest of justice. Ohio law will govern much of this case, and Ohio has a stronger interest in resolving the parties' dispute than Wisconsin has. Finally, a transfer resolves contested issues of personal jurisdiction. The court will therefore grant the Fund's request to transfer this case.

## ORDER

IT IS ORDERED that:

1. Defendant Pipe Fitters Union Local No. 120 Insurance Fund's motion to dismiss, or, in the alternative, to transfer venue, Dkt. 2, is GRANTED in part.

2. This case is transferred to the United States District Court for the Northern District of Ohio, Eastern Division.

Entered September 17, 2015.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge

13